UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TROY A. GILBERT,

    Petitioner,

v.　　　　　　　　　　　　　　　　　　　Case No. 3:16-cv-725-J-32MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et. al.,

    Respondents.

## ORDER

**I.　Status**

Petitioner, Troy A. Gilbert, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. See Doc. 1. Petitioner challenges a state court (Duval County, Florida) judgment of conviction for sale or delivery of cocaine for which he is currently serving a twenty-five-year term of incarceration. Doc. 1 at 1. Respondents filed a Response. See Doc. 17 (Resp.).[1] Petitioner filed a Reply. See Doc. 22. This case is ripe for review.

---

[1] Attached to the Response are several exhibits. The Court cites to the exhibits as "Resp. Ex."

## II. Governing Legal Principals

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

2

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

3

### B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III. Analysis

**Ground One**

Petitioner alleges that the trial court erred in denying Petitioner's motion for judgment of acquittal because the evidence failed to establish the elements of the offense of sale or delivery of cocaine. Doc. 1 at 4. In support of this argument, Petitioner avers that the evidence presented failed to show that it was, in fact, Petitioner who sold or delivered the cocaine to the undercover narcotics agents. He claims that the video surveillance evidence presented at trial did not clearly show the identity of the suspect who conducted the sale, and the undercover officer's positive identification of Petitioner was unreliable. Reply at 2. Petitioner asserts that the trial court's failure

5

to grant the motion for judgment of acquittal was an abuse of discretion that violated Petitioner's Fifth and Fourteenth Amendment rights.

At the close of the state's case, trial counsel moved for judgment of acquittal, arguing that the state failed to establish that a controlled substance was sold or delivered, and that Petitioner was the individual who completed that sale or delivery. Resp. Ex. B at 80-81. In response, the state argued that it presented evidence that the substance was crack cocaine and "even though the defendant didn't actually put it in the detectives' hands, he put it on a windowsill and told them where it was and received $60 in exchange for the crack cocaine." Id. at 81. The trial court denied Petitioner's motion for judgment of acquittal, finding in pertinent part:

> Having listened to the evidence taken in the light most favorable to the state, I find that there is a prima facie case to proceed and I will deny the motion for judgment of acquittal.

Id. On direct appeal, Petitioner, with the benefit of counsel, filed an initial brief pursuant to Anders v. California, 386 U.S. 738 (1967), representing that no good faith argument of reversible error could be made. Resp. Ex. C. Petitioner then filed a pro se initial brief arguing that the trial court erred in denying Petitioner's motion for judgment of acquittal since the evidence failed to establish the elements of the crime charged in the Information. Resp. Ex. D. The state did not file an answer brief. See Gilbert v. State, No. 1D09-3228 (Fla. 1st DCA Dec. 8, 2009). Thereafter, the First District Court of Appeal per curiam affirmed Petitioner's conviction and sentence without a written opinion. See Resp. Ex. E. To the extent that the First DCA affirmed the trial court's denial of Petitioner's motion for judgment of acquittal on the merits,

the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

When reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. Id. Here, the jury found Petitioner guilty of sale or delivery of cocaine as charged in the Information. Resp. Ex. A at 35. To prove the crime of sale or delivery of cocaine, the state must prove the following two elements: (1) Petitioner sold or delivered a certain substance, and (2) the substance was cocaine. Resp. Ex. B at 109; see also §§ 893.13(1)(a)1, 893.03(2)(a)4, Fla. Stat. (2008).

At trial, Detective Manuel Pichardo, a narcotics detective with the Jacksonville Sheriff's Office, testified that he and Detective J.C. Hux met Petitioner outside of a BP gas station while they were working undercover. Resp. Ex. B at 23-24. Petitioner approached the detectives and asked if they wanted to buy crack cocaine. Id. When they agreed, Petitioner got into their vehicle and they drove to the Siesta Hotel. Id. at 23-25. The officers gave Petitioner $60 and Petitioner went into the hotel. Id. at 25-28. Petitioner reappeared and placed the cocaine on a window ledge near the truck. Id. 28-30. One of the detectives retrieved the cocaine from the window. Id. at 29-31. The state also presented the testimony of Kim Lardizabal, a Florida Department of Law

Enforcement employee, who testified that she tested the substance and confirmed that the substance in this case was cocaine. Id. at 74-78.

Taken in the light most favorable to the state, the Court finds there was sufficient evidence to permit a rational trier of fact to find Petitioner guilty of sale or delivery of cocaine. As such, upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground One is due to be denied.

**Ground Two**

Petitioner asserts that trial counsel was ineffective for failing to object to the prosecutor eliciting improper testimony from Detective Hux regarding his experience with other sale or delivery cases and common criminal behaviors during drug sales. Doc. 1 at 6-7. According to Petitioner, this testimony allowed the jury to infer that Petitioner was guilty because his behavior was similar to the behavior of others who committed similar crimes.

Petitioner raised this claim in his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. T at 43-45. The trial court denied this issue, finding in pertinent part:

> Defendant contends counsel was ineffective for allowing the prosecutor to use inadmissible testimony during trial. Specifically, Defendant cites to testimony from Detective J.C. Hux, maintaining his testimony amounted to "general criminal behavior" testimony and is inadmissible as substantive proof of Defendant's guilt. As to prejudice,

8

> Defendant alleges the results of his case would have been different if this testimony had been excluded.
>
> It is well-settled that general criminal behavior testimony based upon a law enforcement officer's observations and experience in other cases is inadmissible as substantive proof of a defendant's guilt. Baskin v. State, 732 So. 2d 1179, 1180 (Fla. 1st DCA 1999). This is so because "a defendant has a right to be tried based on the evidence against him or her, not on the characteristics or general behavior of certain classes of criminals in general." Id. The Court in Baskin held, however, that the admission of the detective's testimony concerning general customs of drug dealers was harmless error because "[w]hether drug dealers keep the substance on their persons during transactions or store it in a separate location, was not an issue . . . and had no bearing on the defense of confused identity." Id. at 1180.
>
> The Court finds the allegedly improper testimony amounts to harmless error because it did not go to substantive proof of Defendant's guilt. At trial, counsel objected during the disputed line of questioning. As a result of the objection, the Court instructed the State to rephrase its question. Further, Defendant utilized a defense of "misidentification" to support his theory that he was not the individual that officers encountered on the day of the offense. Similar to Baskin, Detective Hux's testimony regarding why drug dealers do not carry drugs on their person, or why drug dealers refrain from physically handing the drugs to another person, did not bear on Defendant's defense of misidentification. See id. Accordingly, counsel was not ineffective, and Defendant is not entitled to relief.

Resp. Ex. T at 127-28. (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. V.

To the extent that the First DCA affirmed the trial court's denial on the merits,[2]

---

[2] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

9

the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. As the trial court noted, counsel did object to Detective Hux's statements and argued the testimony was speculation. See Resp. Ex. B at 52. As a result of the objection, the Court directed the state to rephrase the question. Id. Thus, counsel did not perform deficiently. Further, Petitioner cannot show prejudice as his defense at trial was misidentification. Id. at 19-20, 35-37, 62, 65, 95-100. Indeed, if Petitioner maintained at trial that he did not participate in the drug transaction, then Detective Hux's testimony regarding common criminal behaviors during drug sales would not contradict that defense. As such, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Two is due to be denied.

**Ground Three**

Petitioner contends that trial counsel was ineffective for eliciting testimony from Detective Hux about his prior interactions with Petitioner during prior "buy-walk" operations. Doc. 1 at 9. According to Petitioner, by eliciting this testimony, trial counsel was presenting irrelevant character evidence or evidence of other crimes, wrongs, or acts of Petitioner. Id.

Petitioner raised a version of this claim as a sub-claim to ground four of his Rule 3.850 motion. Resp. Ex. T at 49-51. The trial court directed the state to file a response to this issue. Resp. Ex. T at 58-59. In its response, the state argued the following, in

10

relevant part:

> *(i) The prosecutor limited detective's testimony to 'prior contact'*
>
> During the direct examination of Detective Hux, the State limited its question to 'prior contact.' Specifically, the State asked the detective if prior to November 10, 2008 he had contact with the Defendant on a prior occasion to which the detective said he had. [Resp. Ex. B at 45]. According to the detective, based upon that 'prior contact' with the Defendant, he was able to tell his partner that the person involved in the sell was Troy Gilbert. [Id. at 46]. The prosecutor also brought out that prior to the crime at issue, the detective had prior contact with the Defendant several times as part of his 'tour of duty' with the Jacksonville Sheriff's Office. [Id. at 61]. However, the State did not specify as to what the prior contact was. [Id. at 61]. To the contrary, the detective testified that every time he saw the Defendant, he would get out of his marked police car and make a 'citizen contact' with the Defendant. [Id. at 66-67]. Thus, there was no valid objection that could have been made regarding the State's questioning of the detective's prior contact with the Defendant. The prejudice prong of Strickland is conclusively refuted if an objection would have been meritless. Mungin v. State, 932 So. 2d 986, 996-997 (Fla. 2006). Accordingly, the State suggests that Ground 4(b) of the Defendant's Motion may be summarily denied as the Defendant has failed to establish prejudice to himself.
>
> *(ii) Defense attorney discussed prior 'buy-walk' to establish misidentification*
>
> It was the defense attorney that clarified that one of the alleged prior contacts with the Defendant involved a buy-walk operation, which is where the Detective supposedly learned who the Defendant was. [Resp. Ex. B at 63-64]. The defense attorney established that because the detective was in a full police uniform during the alleged prior contact, the detective was worried that the Defendant might recognize him during the current drug transaction. [Id. at 64-65]. The defense attorney then focused on the detective's recorded comment on the video wherein he stated it was an unknown

11

black male who was handling the sale to demonstrate that the detective did not identify the Defendant as he claimed. [Id. at 61-62, 65]. The defense attorney also questioned the detective regarding the buy-walk envelope, which had unknown black male written on it, even though the detective claimed he allegedly told the other detective who the Defendant was at the time of the drug transaction. [Id. at 62].

*(iii) Defense counsel's handling of prior contact was a strategic decision*

Although strategic decisions generally do not constitute ineffective assistance of counsel, an evidentiary hearing is usually necessary to determine whether counsel's decision was the product of strategy or ineptitude. Jackson v. State, 975 So. 2d 485, 486 (Fla. 2nd DCA 2007). However, an evidentiary hearing is not required when it is obvious from the record that counsel's decision was strategic. Id. In the instant case, during closing argument, the defense attorney encouraged the jurors to watch the first ten seconds of the video, wherein the detective stated they were dealing with an unknown black male. [Resp. Ex. B at 95]. The defense attorney argued that if the detective had really seen the man he claimed he saw at a previous buy-walk operation, the detective would not have indicated it was an unknown black male. [Id. at 98]. The defense attorney also focused on the fact the prior contact between the detective and the Defendant was July 2007, nearly 15 months earlier. [Id. at 99]. Thus, it was clear from the record that the defense attorney made the strategic decision to bring out the alleged prior contact between the detective and the Defendant to demonstrate that the detective had misidentified the Defendant in the current case. An attorney's strategic decision can bind a defendant even when the decision was made without consulting the defendant. McNeal v. Wainwright, 722 F.2d 674, 677 (11th Cir. 1984). Accordingly, the State suggests that Ground 4(b) of the Defendant's Motion may be summarily denied as the Defendant has failed to demonstrate a legal deficiency by his attorney in that his attorney's decision to discuss the prior 'buy-walk' was a sound strategic decision.

Resp. Ex. T at 67-77.

Upon consideration of the state's response, the trial court denied the claim, finding in pertinent part:

> Defendant contends counsel was ineffective for failing to move for a mistrial based on the prosecutor's use of collateral crimes evidence and the Detective's experience with other drug dealers. Within this ground, Defendant raises a series of sub-issues: (a) the prosecutor used collateral crimes evidence against Defendant; (b) the prosecutor and trial counsel were ineffective for eliciting specific testimony about Defendant's prior contact with police, including prior "buy-walk" operations; (c) prosecutorial misconduct; and (d) ineffective assistance of appellate counsel.
>
> Where a defendant alleges counsel was ineffective for failing to move for a mistrial, the defendant must show that the motion for mistrial would have been granted to satisfy the prejudice prong of Strickland. Middleton v. State, 41 So. 3d 357, 360 (Fla. 1st DCA 2010). "A motion for mistrial should be granted only when the error is deemed so prejudicial that it vitiates the entire trial, depriving the defendant of a fair proceeding." Floyd v. State, 913 So. 2d 564, 576 (Fla. 2005). Upon consideration of the sub-issues below, the Court finds counsel was not ineffective for failing to move for a mistrial.
>
> *(a) Prosecutor Used Collateral Crime Evidence*
>
> During direct-examination, Detective Hux testified he had encountered Defendant on several occasions prior to this case, and Defendant was the person who sold him drugs on the day of the instant offense. During cross-examination, trial counsel brought out Detective Hux's previous interaction with Defendant, including a different buy-walk operation. Trial counsel also elicited testimony that Detective Hux was able to identify Defendant during the instant offense based on the previous buy-walk interaction that occurred. During

13

redirect examination, Detective Hux stated his first contact with Defendant was in 2007 during the prior operation. Every time Detective Hux had contact with Defendant after that first buy-walk operation, he would make citizen contact with him, which did not necessarily mean Defendant was searched as part of an investigation or arrested. Detective Hux further testified he interviewed Defendant about the instant offense, Defendant was arrested on an unrelated charge, and the Detective wore a mask during the interview with Defendant because he was still undercover.

There was no valid objection that could have been made during direct examination regarding the State's questioning of the Detective's prior contact with Defendant. The State only elicited testimony from the Detective that he had previously interacted with Defendant and, thus, he knew Defendant on the day of the instant offense. As such, the State's questioning was not improper and any objection would have been meritless. See Schoenwetter v. State, 46 So. 3d 535, 546 (Fla. 2010) (holding counsel cannot be deemed ineffective for failing to make a meritless objection). To the extent Defendant re-alleges the same claims as raised in Ground (1), that testimony from officers amounted to "general criminal behavior" testimony and amounts to harmless error because it did not go to substantive proof of Defendant's guilt. As to this sub-issue, Defendant is not entitled to relief.

*(b) The Prosecutor and Trial Counsel were Ineffective for Eliciting Specific Testimony About Defendant's Prior Contact with Police, Including Prior "Buy-Walk" Operations*

Upon a review of the State's Response, in conjunction with the record attachments provided with said Response, this sub-issue is denied. Barnes v. State, 38 So. 3d 218, 219-20 (Fla. 2d DCA 2010) (reasoning "the rules of criminal and appellate procedure do not preclude a court from incorporating a response from the State if the State has provided the necessary record documents.") (citation omitted).

14

Resp. Ex. T at 130-32 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. V.

To the extent that the First DCA affirmed the trial court's denial on the merits,[3] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court finds that Petitioner cannot demonstrate that his counsel's decision to question Detective Hux about his prior contact with Petitioner was objectively unreasonable, and he cannot overcome the presumption that his counsel's actions were strategic in light of Petitioner's misidentification defense. Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision is neither contrary to nor an unreasonable application of Strickland, and is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Three is due to be denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED with prejudice**.

2. The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

---

[3] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

3. If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[4]

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of April, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C: Troy A. Gilbert, #105791
Anne Catherine Conley, Esq.

---

[4] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.